_Serve_ 

| Circuit Court of Hamilton County | **STATE OF TENNESSEE CIVIL SUMMONS** page 1 of 1 | Case Number 22C 735 |

| Timothy W. Meyer | **Vs.** Zachary Lloyd et. al. |

Served On:

_____Zachary Lloyd_____   _____3410 Amnicola Hwy. Chattanooga, TN 37406_____

You are hereby summoned to defend a civil action filed against you in Circuit Court, Hamilton County, Tennessee. Your defense must be made within thirty (30) days from the date this summons is served upon you. You are directed to file your defense with the clerk of the court and send a copy to the plaintiff's attorney at the address listed below. If you fail to defend this action by the below date, judgment by default may be rendered against you for the relief sought in the complaint.

**LARRY L. HENRY, CLERK**

Issued: 08/12/22

_____
Clerk / Deputy Clerk

Attorney for Plaintiff:  _____Stephen Duggins, 8052 Standifer Gap Rd., Ste. B, Chattanooga,_____
_____TN 37421 BPR #013222_____

### NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S): Tennessee law provides a ten thousand dollar ($10,000) personal property exemption as well as a homestead exemption from execution or seizure to satisfy a judgment. The amount of the homestead exemption depends upon your age and the other factors which are listed in TCA § 26-2-301. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for your self and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Please state file number on list.

Mail list to  _____, _____ Clerk, _____County
_____

### CERTIFICATION (IF APPLICABLE)

I, _____, _____ Clerk of _____ County do certify this to be a true and correct copy of the original summons issued in this case.

Date: _____

_____
Clerk / Deputy Clerk

**OFFICER'S RETURN**: Please execute this summons and make your return within ninety (90) days of issuance as provided by law.

I certify that I have served this summons together with the complaint as follows: _____

_____

Date:_____         By:_____
                                          Please Print: Officer, Title

_____Agency Address_____         _____Signature_____

**RETURN ON SERVICE OF SUMMONS BY MAIL:** I hereby certify and return that on _____, I sent postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in the above styled case, to the defendant _____. On _____ I received the return receipt, which had been signed by _____ on _____. The return receipt is attached to this original summons to be filed by the Court Clerk.

Date: _____         _____
                                          Notary Public / Deputy Clerk (Comm. Expires _____)

_____Signature of Plaintiff_____         _____Plaintiff's Attorney (or Person Authorized to Serve Process)_____
                                          **(Attach return receipt on back)**

**EXHIBIT A**

_ADA: If you need assistance or accommodations because of a disability, please call _____, ADA Coordinator_

| Circuit Court of Hamilton County | **STATE OF TENNESSEE CIVIL SUMMONS** page 1 of 1 | Case Number 22C835 |
| --- | --- | --- |

| _Timothy W. Meyer_ | Vs. | _Zachary Lloyd et. al._ |
| --- | --- | --- |

Served On:

_Luke Simon_        3410 Amnicola Hwy. Chattanooga, TN 37406

You are hereby summoned to defend a civil action filed against you in Circuit Court, Hamilton County, Tennessee. Your defense must be made within thirty (30) days from the date this summons is served upon you. You are directed to file your defense with the clerk of the court and send a copy to the plaintiff's attorney at the address listed below. If you fail to defend this action by the below date, judgment by default may be rendered against you for the relief sought in the complaint.

**LARRY L. HENRY, CLERK**

Issued: 08/12/22

Clerk / Deputy Clerk

Attorney for Plaintiff:  Stephen Duggins, 8052 Standifer Gap Rd., Ste. B, Chattanooga, TN 37421 BPR #013222

### NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S): Tennessee law provides a ten thousand dollar ($10,000) personal property exemption as well as a homestead exemption from execution or seizure to satisfy a judgment. The amount of the homestead exemption depends upon your age and the other factors which are listed in TCA § 26-2-301. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for your self and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Please state file number on list.

Mail list to _____, _____ Clerk, _____ County

### CERTIFICATION (IF APPLICABLE)

I, _____, _____ Clerk of _____ County do certify this to be a true and correct copy of the original summons issued in this case.

Date: _____

Clerk / Deputy Clerk

**OFFICER'S RETURN**: Please execute this summons and make your return within ninety (90) days of issuance as provided by law.

I certify that I have served this summons together with the complaint as follows: _____

Date: _____    By: _____

Please Print: Officer, Title

Agency Address        Signature

**RETURN ON SERVICE OF SUMMONS BY MAIL**: I hereby certify and return that on _____, I sent postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in the above styled case, to the defendant _____. On _____ I received the return receipt, which had been signed by _____ on _____. The return receipt is attached to this original summons to be filed by the Court Clerk.

Date: _____

Notary Public / Deputy Clerk (Comm. Expires _____ )

Signature of Plaintiff        Plaintiff's Attorney (or Person Authorized to Serve Process)
**(Attach return receipt on back)**

_ADA: If you need assistance or accommodations because of a disability, please call _____, ADA Coordinator, at ( ) _____._

Rev. 03/11

| Circuit Court of Hamilton County | **STATE OF TENNESSEE CIVIL SUMMONS** page 1 of 1 | Case Number 22C835 |
|---|---|---|

| Timothy W. Meyer | Vs. | Zachary Lloyd et. al. |

Served On:

The City of Chattanooga Tennessee c/o Emily O'Donnell, 100 E. 11th St. Ste. 200 Chattanooga, TN 37402

You are hereby summoned to defend a civil action filed against you in Circuit Court, Hamilton County, Tennessee. Your defense must be made within thirty (30) days from the date this summons is served upon you. You are directed to file your defense with the clerk of the court and send a copy to the plaintiff's attorney at the address listed below. If you fail to defend this action by the below date, judgment by default may be rendered against you for the relief sought in the complaint.

**LARRY L. HENRY, CLERK**

Issued: 08/12/22

Clerk / Deputy Clerk

Attorney for Plaintiff: Stephen Duggins, 8052 Standifer Gap Rd., Ste. B, Chattanooga, TN 37421 BPR #013222

**NOTICE OF PERSONAL PROPERTY EXEMPTION**

TO THE DEFENDANT(S): Tennessee law provides a ten thousand dollar ($10,000) personal property exemption as well as a homestead exemption from execution or seizure to satisfy a judgment. The amount of the homestead exemption depends upon your age and the other factors which are listed in TCA § 26-2-301. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for your self and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Please state file number on list.

Mail list to _____, _____ Clerk, _____ County

**CERTIFICATION (IF APPLICABLE)**

I, _____, _____ Clerk of _____ County do certify this to be a true and correct copy of the original summons issued in this case.

Date: _____

Clerk / Deputy Clerk

**OFFICER'S RETURN:** Please execute this summons and make your return within ninety (90) days of issuance as provided by law.

I certify that I have served this summons together with the complaint as follows: _____

Date: _____  By: _____
Please Print: Officer, Title

Agency Address  Signature

**RETURN ON SERVICE OF SUMMONS BY MAIL:** I hereby certify and return that on _____, I sent postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in the above styled case, to the defendant _____. On _____ I received the return receipt, which had been signed by _____ on _____. The return receipt is attached to this original summons to be filed by the Court Clerk.

Date: _____

Notary Public / Deputy Clerk (Comm. Expires _____)

Signature of Plaintiff  Plaintiff's Attorney (or Person Authorized to Serve Process)
**(Attach return receipt on back)**

*ADA: If you need assistance or accommodations because of a disability, please call _____, ADA Coordinator, at ( ) _____*

# IN THE CIRCUIT COURT FOR HAMILTON COUNTY, TENNESSEE

TIMOTHY W. MEYER and )
MELISSA C. MEYER, )
                    )
    Plaintiffs, )
                    )
v. )      Case No. 22C835
                    )
ZACHARY LLOYD, LUKE )      JURY DEMANDED
SIMON, THE CITY OF )
CHATTANOOGA, TENNESSEE, and )
WALMART, INC. )
                    )
    Defendants. )

## COMPLAINT

Plaintiffs Timothy W. Meyer and Melissa C. Meyer state the following as their complaint against Zachary Lloyd, Luke Simon, The City of Chattanooga, Tennessee, and Walmart, Inc.

### PARTIES, JURISDICTION AND VENUE

1.    Plaintiff Timothy W. Meyer ("Mr. Meyer") is an individual and a resident of Hamilton County, Tennessee.

2.    Plaintiff Melissa C. Meyer ("Mrs. Meyer") is an individual and a resident of Hamilton County, Tennessee.

3.    Defendant Zachary Lloyd ("Officer Lloyd") is an individual who was, at the pertinent times, an officer and employee of the Chattanooga Police Department. Upon information and belief, Officer Lloyd is a resident of Hamilton County, Tennessee.

4.    Defendant Luke Simon ("Officer Simon") is an individual who was, at the pertinent times, an officer and employee of the Chattanooga Police Department. Upon information and belief, Officer Simmons is a resident of Hamilton County, Tennessee.

1

5.     The City of Chattanooga, Tennessee ("Chattanooga" or "the City of Chattanooga") is a municipality in Hamilton County, Tennessee.

6.     Walmart, Inc. ("Walmart") is an entity which operates retail stores throughout the nation, including in Hamilton County, Tennessee and specifically including the Walmart Supercenter #3659 located on Signal Mountain Road in Chattanooga, Tennessee.

7.     This Court has subject matter jurisdiction over this case because it involves claims for violations of 42 U.S.C. § 1983 as well as claims for assault, battery, intentional infliction of emotional distress, and civil conspiracy.

8.     This Court has personal jurisdiction over Officer Lloyd because he is, upon information and belief, a resident of Hamilton County, Tennessee and, also, because this action arises out of Officer Lloyd's actions in Hamilton County, Tennessee.

9.     This Court has personal jurisdiction over Officer Simon because he is, upon information and belief, a resident of Hamilton County, Tennessee and, also, because this action arises out of Officer Simon's actions in Hamilton County, Tennessee.

10.     This Court has personal jurisdiction over the City of Chattanooga because it is a municipality located within Hamilton County, Tennessee and, also, because Plaintiffs' causes of action arise out of actions by the City's agents in Hamilton County, Tennessee.

11.     This Court has personal jurisdiction over Walmart because it operates stores in Hamilton County, Tennessee and, also, because Plaintiffs' causes of action arise out of actions by Walmart's agents in Hamilton County, Tennessee.

12.     Venue is proper in this Court because this case arises out of the defendants' actions in Hamilton County, Tennessee, because Plaintiffs' causes of action arose in Hamilton County, Tennessee, and because the defendants can be found in Hamilton County, Tennessee.

2

FACTUAL BACKGROUND

13.     Mr. Meyer and Mrs. Meyer are husband and wife.

14.     Mr. and Mrs. Meyer lived for many years as Christian missionaries in Mexico.

15.     Although Mr. and Mrs. Meyer currently live in the United States, they continue to live a lifestyle in which they regularly engage in Christian evangelism as part of what they believe to be their calling and their Christian duty.

16.     As a part of their belief in the importance of Christian evangelism, Mr. and Mrs. Meyer believe in a lifestyle of telling people, including strangers, about God.

17.     In furtherance of what they believed to be their calling to serve as Christian evangelists, the Meyers lead a Christian evangelistic organization known as EVAN Ministries.

18.     As a part of EVAN Ministries' evangelistic outreach activities, Mr. Meyer went to the country of Lebanon for an evangelistic mission trip in September of 2020, and both Mr. and Mrs. Meyer went to the country of Lebanon for an evangelistic mission trip in June of 2021.

19.     While in Lebanon, Mr. and Mrs. Meyer engaged in Christian evangelistic ministries with a Lebanese pastor by the name of Josef Zorob ("Pastor Josef") from Beruit, Lebanon.

20.     Shortly before August 14, 2021, Pastor Josef traveled to the United States.

21.     Among other people Pastor Josef was meeting while in the United States, Pastor Zorob traveled to the United States to meet with Mr. and Mrs. Meyer.

22.     Pastor Josef stayed with Mr. and Mrs. Meyer while he was in Chattanooga.

23.     Pastor Josef arrived in Chattanooga on August 12, 2021 and was staying with Mr. and Mrs. Meyer on August 14, 2021.

3

24.     On the morning of August 14, 2021, Mr. Meyer went to the Walmart store on Signal Mountain Road in Hamilton County, Tennessee.

25.     Mr. Meyer went to the Walmart store for the purpose of purchasing V8 juice at the specific request of Pastor Josef and for the purpose of purchasing a case of bottled water.

26.     While in the Walmart store, Mr. Meyer saw Alyaa Al Janabi, a Walmart employee.

27.     Mr. Meyer had known Ms. Al Janabi for more than two years, talking to her on and off as he ran into her both at Planet Fitness gym in Hixson and at Walmart.

28.     When Mr. Meyer saw Ms. Al Janabi in the Walmart store on Saturday, August 14, 2021, he approached Ms. Al Janabi to invite her to church on Sunday to hear Pastor Josef speak.

29.     Mr. Meyer thought Ms. Janabi might be interested in hearing Pastor Josef speak because Ms. Janabi was also of Lebanese descent.

30.     When Mr. Meyer greeted Ms. Al Janabi, one of Ms. Al Janabi's co-workers told Mr. Meyer that Ms. Al Janabi did not want to talk to Mr. Meyer.

31.     Mr. Meyer responded by saying, "Oh, we're friends."

32.     Ms. Al Janabi then said, "I'm not your friend."

33.     Ms. Al Janabi's statement surprised Mr. Meyer because, when he had last run into Ms. Al Janabi sometime before the Meyers' Lebanese mission trip, Ms. Al Janabi was cordial and seemed genuinely interested in the Meyers' plans for the Lebanese trip.

34.     Surprised by Ms. Al Janabi's response, Mr. Meyer simply said, "Okay, well, God bless you," and then left.

35.     After leaving Walmart, Mr. Meyer went home.

36.     Mr. Meyer subsequently went to Home Depot to purchase some supplies.

4

37.     While Mr. Meyer was on the Home Depot trip, a man identifying himself as Deputy Daniel Timms called Mrs. Meyer's office phone.

38.     The person claiming to be Deputy Timms told Mrs. Meyer that someone may press charges against Mr. Meyer for harassing someone at Walmart and that Mr. Meyer needed to call the purported Deputy Timms back.

39.     Mrs. Meyer advised the purported Deputy Timms that she and Mr. Meyer had been praying for Ms. Al Janabi.

40.     After the call from the purported Deputy Timms, Mrs. Meyer immediately called Mr. Meyer and told him about the call.

41.     As they were speaking, Mr. Meyer received another call and hung up with his wife in order to take the new call.

42.     The caller purported to be Deputy Daniel Timms and spoke aggressively to Mr. Meyer, stating that he had been accused of stalking a woman at Walmart named Alyaa.

43.     The purported Deputy Timms asked Mr. Meyer how he knew Alyaa.

44.     As Mr. Meyer was explaining how he knew Ms. Al Janabi, he included a reference to how Mr. Meyer and his family were praying for Ms. Al Janabi.

45.     When Mr. Meyer referenced praying for Ms. Al Janabi, the purported Deputy Timms responded with vulgarity, proclaimed that he was an atheist, and called Mr. Meyer a liar.

46.     After Mr. Meyer suggested that the purported Deputy Timms should get a neutral person who was not angry or an atheist to talk to him, Deputy Timms said he would get a deputy to call him back.

47.　　　As Mr. Meyer was asking the purported Deputy Timms how Mr. Meyers could get in touch with an unbiased, non-atheist deputy, the purported Deputy Timms hung up on Mr. Meyers in the middle of a sentence.

48.　　　Prior to the purported Deputy Timms hanging up on Mr. Meyer, Mr. Meyer also asked "Deputy Timms" if their conversation was being recorded, and "Deputy Timms" replied, "You better believe it."

49.　　　At the time, Mr. Meyer thought that the person who called him was truly a deputy named Daniel Timms.

50.　　　Mr. Meyer later learned that there is no Deputy Daniel Timms with either the Chattanooga Police Department or the Hamilton County Sheriff's Department.

51.　　　Upon information and belief, the individual who falsely identified himself as Deputy Daniel Timms was actually Officer Lloyd.

52.　　　Despite the purported Deputy Timms' statement that he would have another deputy call Mr. Meyer back, no one called Mr. Meyer back.

53.　　　Mr. Meyer then went to the police station to file a complaint against Deputy Timms and to address any issue that might need to be addressed.

54.　　　It was Saturday afternoon when Mr. Meyer arrived at the Chattanooga Police Department, and upon his arrival, he found that the office was closed to the public.

55.　　　Mr. Meyer then took a picture of himself at the police station and texted it to the purported Deputy Daniel Timms, but received no response.

56.　　　When Mr. Meyer subsequently attempted to call the purported Deputy Timms, he found that he had been blocked.

6

57.     Mr. Meyer also left a message with the Hamilton County Sheriff's Department indicating that a Deputy Daniel Timms had called with a threatening phone call.

58.     In a further attempt to resolve any issues, Mr. Meyer then went to the Signal Mountain Road Walmart store.

59.     Mr. Meyer went to the front desk area of the Walmart and asked for a manager.

60.     When the manager arrived, Mr. Meyer expressed his desire to clear up any misunderstanding and resolve any issues since he had received a call from a deputy asserting that he was harassing someone at Walmart.

61.     The manager told Mr. Meyer that they had not had any complaints against him and that if the police were involved, that was a matter between Mr. Meyer and the police

62.     Several additional Walmart representatives, believed to be part of asset management, walked up and advised Mr. Meyer that he was disrupting business and that he needed to leave.

63.     Mr. Meyer stated that he was here to talk to the manager for the purpose of straightening out any misunderstanding.

64.     The Walmart representative repeated that Mr. Meyer needed to leave because he was disrupting business and stated that if he did not leave, he would be banned from shopping at the store.

65.     Mr. Meyer responded by agreeing to leave.

66.     Mr. Meyer then left.

67.     That afternoon, Mr. Meyer made other efforts to contact the purported Deputy Timms, but those efforts were unsuccessful.

68.     Mr. Meyer also made other efforts to find out if there really was a Deputy Timms, but he was not able to find out anything conclusive.

69.     Mr. Meyer called the Hamilton County Sheriff's department and the City of Chattanooga Police to express his concern to dispatchers about the call he had received from the purported Deputy Daniel Timms.

70.     A dispatcher advised that an officer could be sent out to meet with Mr. Meyer where the incident took place.

71.     Mr. Meyer advised that he would first try to clear up any misunderstanding with Walmart and that he would call back to set up a meeting if needed.

72.     Mr. Meyer went to the Walmart and, after entering the store, went straight to the service desk.

73.     Mr. Meyer asked to speak to the same manager with whom he had spoken earlier in the day.

74.     Mr. Meyer was told the manager had gone for the day.

75.     In reality, the manager had not gone for the day.

76.     Within a short period of time after Mr. Meyer's arrival, three Chattanooga police officers arrived: Officer Zachary Lloyd, Officer Luke Simon, and Officer Brydon Long.

77.     Upon information and belief, a Walmart representative called the police despite the fact that Mr. Meyer was not causing any disturbance and despite the fact that Mr. Meyer had not been instructed against returning to the Walmart store.

78.     When an officer asked Mr. Meyer what the problem was, Mr. Meyer began explaining about the threatening call he had received from the purported Deputy Timms.

8

79.     As Mr. Meyer attempted to explain the situation with the threatening call from the purported Deputy Timms, the officers indicated that they were not aware of any Deputy Timms but that that was not really important at this point.

80.     The officers referenced that Mr. Meyer had been told to leave earlier.

81.     Mr. Meyer replied by indicating that he had complied and had left, but that he wanted to clear up any confusion as well as file a complaint now that he believed the purported "Deputy Timms" was impersonating an officer and was using Mr. Meyer's personal information that he had left with Walmart on his contact card.

82.     The officers replied they didn't know about "that" and weren't interested in "it."

83.     The officers instructed Mr. Meyer that he needed to follow them to the asset protection room to verify his address.

84.     Once in the asset protection room, the officers, particularly Officer Lloyd, became more aggressive toward Mr. Meyer.

85.     While in that room, a Walmart representative presented Mr. Meyer with a form to sign.

86.     Mr. Meyer is not certain of the exact content of the form, but, upon information and belief, the form purported to be an agreement not to come back to any Walmart or Sams stores throughout the country.

87.     Mr. Meyer expressed that he did not completely understand what he was being asked to sign and asked to speak to a manager.

88.     The police told Mr. Meyer that the asset protection man in the room was the acting manager in that moment.

89.     Mr. Meyer requested a manager's I.D., but none was provided.

9

90.     After further discussion, Mr. Meyer expressed that he would rather not sign the document and that he would still like to speak to the head manager.

91.     After a significant pause in discussion, Officer Lloyd stepped back in a way that caused Mr. Meyer to believe that the officers were done.

92.     Mr. Meyer stood up and asked if he was free to go.

93.     Officer Simons said they were not done with their investigation.

94.     Mr. Meyer told officers that he had come and sat down on his own free will, a fact the officers they did not dispute.

95.     There was no legal justification for the officers to continue detaining Mr. Meyer.

96.     Mr. Meyer once again asked if he was free to go.

97.     The officers, without warning, grabbed Mr. Meyers and shoved him, causing him to land painfully back on the metal bench where he was previously seated.

98.     In pain and fear, Mr. Meyer said he would sign the papers, but an officer said it was too late for that.

99.     In the next series of events, the officers, with the assistance of Walmart personnel, attacked Mr. Meyer and physically abused him without any necessity to do so.

100.    The officers kneed Mr. Meyer in the torso, hit Mr. Meyer's face, and knocked Mr. Meyer's head against a wall.

101.    The officers' abuse continued, and Officer Lloyd unnecessarily tased Mr. Meyer.

102.    Mr. Meyer explained that he was a heart patient, but Officer Lloyd ended up unnecessarily tasing Mr. Meyer three more times.

103.    It was obvious that the officers were trying to "teach Mr. Meyer a lesson."

104.    Walmart personnel helped pin Mr. Meyer down while he was being tased.

10

105. Officers Lloyd and Simon were the primary officers involved in abusing Mr. Meyer.

106. Walmart personnel, presumably asset protection personnel, also assisted the officers in their attack upon Mr. Meyer.

107. After tasing Mr. Meyer four times and leaving 16 burn marks on him, Officer Lloyd started removing Mr. Meyer from the area by lifting him up with a type of arm lock that resulted in most of Mr. Meyer's weight being placed on his shoulder ball socket, thereby causing Mr. Meyer to experience excruciating pain as his feet left contact with the floor and as his shoulder began to pull out of its socket.

108. Being in extreme pain, Mr. Meyer stumbled further, causing even further injury to his shoulder.

109. Mr. Meyer continues to suffer from the shoulder injury to this day.

110. After the officers took Mr. Meyer outside, they repeatedly caused Mr. Meyer's head to slam on the hood through a mechanism whereby Officer Lloyd intentionally and repeatedly kicked Mr. Meyer's heels apart, too wide to sustain balance.

111. All this time, Mr. Meyer was also handcuffed so tight that the cuffs were causing intense pain as well.

112. Mr. Meyer reported the pain to the officers, but they ignored it.

113. An ambulance was called at some point.

114. As Mr. Meyer was awaiting the ambulance, his hands were turning purple from lack of circulation due to how tight the handcuffs were.

11

115.     After paramedics arrived, they began monitoring his heart and eventually took him to the hospital because of the high heart rate and because he failed three 12-lead EKG heart tests.

116.     Mr. Meyer was transported by ambulance to the hospital where he received treatment.

117.     After treatment at the hospital, Mr. Meyer was taken to the Silverdale jail.

118.     Mr. Meyer had serious physical injuries from the officers attacking him and tasing him.

119.     Mr. Meyer experienced severe emotional and mental trauma from the officers attacking him and tasing him.

## COUNT 1 – VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983

120.     All preceding allegations are adopted and incorporated by reference as if fully restated herein.

121.     Mr. Meyer's arrest constituted an unreasonable search and seizure of Mr. Meyer.

122.     Mr. Meyer was arrested without probable cause.

123.     The officers used excessive and unnecessary force against Mr. Meyer.

124.     The officers' arrest of Mr. Meyer and their use of unnecessary and excessive force deprived Mr. Meyer of his liberty without due process and of his right to be free from unreasonable searches and seizures.

125.     Officer Lloyd acted at all times under the color of state law.

126.     Officer Simon acted at all times under color of state law.

127.     Upon information and belief, the actions described above were conducted pursuant to policies, practices, or customs of the City of Chattanooga.

12

128.     Alternatively, the unlawful actions described above were the result of a lack of training or training by the City of Chattanooga.

129.     The actions described above were also undertaken upon the initiation of and with the assistance of Walmart.

130.     The actions were initiated by false statements and false accusations by Walmart.

131.     Walmart personnel also assisted with the wrongful detention and physical abuse of Mr. Meyer.

132.     Walmart personnel conspired with law enforcement to "teach Mr. Meyer" a lesson for attempting to engage in religious discussions.

133.     Walmart personnel lied about Mr. Meyer in order to cause harm to Mr. Meyer and in order to cause law enforcement to take action against Mr. Meyer.

134.     Walmart personnel encouraged Officer Lloyd to threaten Mr. Meyer and to take action against him.

135.     Other Walmart personnel assisted with the physical abuse

136.     Walmart personnel conspired with Officer Lloyd to take actions against Mr. Meyer due to their hostility and religious animus against the religious beliefs that Mr. Meyer was espousing.

137.     The excessiveness of Officer Loyd's physical abuse of Mr. Meyer was motivated, at least in part, by religious hostility and religious animus.

138.     Walmart acted in conjunction and conspiracy with Officers Lloyd and Simon.

139.     Walmart acted in concert with law enforcement, under color of state law, to deprive Mr. Meyer of his Fourth and Fourteenth Amendment rights.

140.     The Defendants' actions violated 42 U.S.C. § 1983.

13

141.    Mr. Meyer has been damaged as a proximate result of the Defendants' violations of 42 U.S.C. § 1983.

142.    Mr. Meyer is entitled to an award of damages.

143.    Mr. Meyer is also entitled to an award of punitive damages against the individual defendants.

144.    Mr. Meyer is also entitled to an award of his reasonable attorney's fees and litigation expenses.

## COUNT 2 – BATTERY

145.    All preceding allegations are adopted and incorporated by reference as if fully restated herein.

146.    The defendants' attack on Mr. Meyer as discussed above inflicted harmful and offensive physical contact upon Mr. Meyer.

147.    Officers Lloyd and Simon intentionally inflicted harmful and offensive physical contact upon Mr. Meyer.

148.    All actions taken by Officer Lloyd and Simon were also taken on behalf of the City of Chattanooga and in their capacity as employees and agents of the City of Chattanooga.

149.    The Walmart representatives who assisted Officers Lloyd and Simon intentionally inflicted harmful and offensive physical contact upon Mr. Meyer.

150.    The defendants' attack on and physical confinement of Mr. Meyer as discussed above constituted battery against Mr. Meyer.

151.    Mr. Meyer was injured and damaged—physically, emotionally, and mentally—as a proximate result of the defendants' battery.

14

152.     The defendants are liable to Mr. Meyer for injuries and damages he sustained as a result of the defendants' battery.

153.     Because of the intentional and egregious nature of the defendants' actions, the individual defendants are also liable to Mr. Meyer for punitive damages.

## COUNT 3 -- ASSAULT

154.     All preceding allegations are adopted and incorporated by reference as if fully restated herein.

155.     Immediately before repeatedly committing battery upon Mr. Meyer, and throughout the events in which the battery occurred, Officers Lloyd and Simon threatened offensive and harmful contact against Mr. Meyer.

156.     Officers Lloyd and Simon threatened harmful and offensive physical contact against Mr. Meyer both through statements, such as a threat to tase Mr. Meyer, and through actions, gestures, and movements that indicated that harmful or offensive physical contact was imminent.

157.     Officers Lloyd and Simon's threats of harmful and offensive physical contact caused great fear, apprehension, and emotional trauma in Mr. Meyer.

158.     Officer Lloyd and Simon's actions infringed upon Mr. Meyer's reasonable sense of personal dignity ordinarily respected in a civil society.

159.     Officers Lloyd and Simon's threats of harmful and offensive physical contact constituted assaults upon Mr. Meyer.

160.     All actions taken by Officer Lloyd and Simon were also taken on behalf of the City of Chattanooga and in their capacity as employees and agents of the City of Chattanooga.

15

161.     Walmart representatives assisted Officers Lloyd and Simon in committing assaults upon and against Mr. Meyer.

162.     Mr. Meyer was injured and damaged as a proximate result of the defendants' assault upon and against Mr. Meyer.

163.     The defendants are liable to Mr. Meyer for the injuries and damages he sustained from the defendants' assaults.

164.     Because of the intentional and egregious nature of the defendants' actions, the individual defendants are also liable to Mr. Meyer for punitive damages.

### COUNT 4 – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

165.     All preceding allegations are adopted and incorporated by reference as if fully restated herein.

166.     Defendants Lloyd, Simon, the City of Chattanooga, and Walmart's actions as described above inflicted severe emotional distress upon Mr. Meyer.

167.     Defendants' acted knowingly and intentionally.

168.     Some of the Defendants, particularly Officer Lloyd acted out of religious animus and hostility.

169.     Defendants acted out of malice.

170.     Defendants' conduct was outrageous, shocked the conscience, and were far outside the bounds of conduct accepted by civil society.

171.     Defendants knew or should have known that their actions against Mr. Meyer would result in severe emotional distress and trauma.

172.     All actions taken by Officer Lloyd and Simon were also taken on behalf of the City of Chattanooga and in their capacities as employees and agents of the City of Chattanooga.

16

173.     Walmart assisted Officers Lloyd and Simon in their acts which intentionally inflicted emotional distress upon Mr. Meyer.

174.     Mr. Meyer was injured and damaged as a proximate result of the defendants' actions.

175.     Defendants Lloyd, Simon, the City of Chattanooga, and Walmart are liable to Mr. Meyer for the damages and injuries he sustained.

176.     As a result of the intentional and egregious nature of the defendants' actions, the individual defendants are also liable to Mr. Meyer for punitive damages.

## COUNT 5 – CIVIL CONSPIRACY

177.     All preceding allegations are adopted and incorporated by reference as if fully restated herein.

178.     Officer Lloyd, Officer Simon, The City of Chattanooga, and Walmart conspired together to commit the wrongs against Mr. Meyer as described above.

179.     Officer Lloyd, Officer Simon, The City of Chattanooga, and Walmart all committed acts in furtherance of their conspiracy.

180.     As co-conspirators, each of the defendants are liable for the acts of the others.

181.     Mr. Meyer was injured and damaged as a proximate result of the defendants' civil conspiracy and acts taken in furtherance of that conspiracy.

182.     The defendants are liable to Mr. Meyer for the injuries and damages he sustained.

183.     As a result of the intentional and egregious nature of the defendants' actions, the individual defendants are also liable to Mr. Meyer for punitive damages.

## COUNT 6 – FALSE ARREST AND FALSE IMPRISONMENT

184.     All preceding allegations are adopted and incorporated by reference as if fully restated herein.

185.     The defendants' actions as described above constituted false imprisonment and false arrest.

186.     Mr. Meyer was damaged and suffered injuries as a proximate result of the false imprisonment and false arrest.

187.     Defendants are liable to Mr. Meyer for the damages and injuries he sustained.

188.     Due to the egregious and intentional nature of the defendants' actions, Mr. Meyer is also entitled to an award of punitive damages.

## COUNT 7 – LOSS OF CONSORTIUM

189.     All preceding allegations are adopted and incorporated by referenced as if fully restated herein.

190.     Defendants' actions against Mr. Meyer caused him serious injury.

191.     Mr. Meyer was unjustly separated from Mrs. Meyer for a period of time.

192.     During this periods, Mr. Meyer was unavailable to Mrs. Meyer for love, intimacy, companionship, support, and services.

193.     Even when Mr. Meyer came home, his injuries and suffering (physical, emotional, and mental) stemming from the defendants' conduct prevented Mr. Meyer from providing Mrs. Meyer with the love, intimacy, companionship, support and services to which she had been accustomed and upon which she depended as his wife.

194.     Mrs. Meyer has suffered damages as a result of the loss of consortium of her husband caused by the defendants.

195.     Defendants are liable to Mrs. Meyer for her loss of consortium.

18

WHEREFORE, Plaintiff Timothy W. Meyer and Melissa C. Meyer pray as follows:

A. That process issue and that the defendants be required to answer this complaint within the time provided by law;

B. That a jury be empaneled to try this cause;

C. That this Court enter a judgment in favor of Plaintiffs and against the defendants for compensatory damages in an amount of $800,000 or such other amount as is proven at trial or deemed appropriate by the jury;

D. That the Court enter a judgment in favor of Plaintiffs and against the defendants for punitive damages in an amount at least three times the amount of compensatory or such other amount as the jury determines to be appropriate;

E. That Plaintiffs be awarded their reasonable attorney fees and expenses;

F. That all costs be taxed to the defendants; and

G. That this Court provide the Plaintiffs with such other legal and equitable relief as it deems proper and appropriate.

This the 12th day of August, 2022.

Respectfully Submitted,

Law Office of Stephen S. Duggins

By: _____
(Stephen S. Duggins, #13222)
8052 Standifer Gap Road, Suite B
Chattanooga, TN 37421
423/635-7113 (t)
423/635-7114 (f)
steve@sdugginslaw.com

19